## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

A.L.A., a minor, by and through his
parents and next friends, F.E.A., and
F.B.A.; et al.

      **Plaintiffs,**

v.                          **Case No. 10-CV-709 JEC/LFG**

THE BOARD OF EDUCATION OF THE
LAS VEGAS CITY SCHOOLS; et al.,

      **Defendants.**

### MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on *Defendants Mel Root and Mary Kay Root's*

*Motion to Dismiss*, filed August 27, 2010 (Doc. 40) ("Motion") and the accompanying

*Memorandum in Support* (Doc. 41) ("Memo."). The Court finds the motion to be well taken and

it will be granted.

## I.     BACKGROUND

This lawsuit arises from alleged hazing incidents at an out-of-town summer camp for

Robertson High School football players in August 2008. *Notice of Removal* at Ex. A, ¶¶ 56-58.

The football players, who were from Las Vegas, New Mexico, traveled approximately 25 miles

east to the Western Life Camp ("WLC") in Gallinas Canyon. *Id.* at ¶ 35. WLC is owned and

managed by Defendants Mel Root and Mary Kay Root. *Id.* Plaintiffs allege that Las Vegas City

Schools ("LVCS") leased WLC from the Roots, and WLC "became de facto public property of

LVCS during the period of the lease arrangement from April [sic] 11-14, 2008." *Id.* at ¶ 59.

According to Plaintiffs' Complaint, Michael Gallegos, Jr., Lucas Martinez, Marcus

Gutierrez, Steven Garcia, Santiago Armijo, and Jerek Padilla—all members of the Robertson High School football team who attended the out-of-town summer camp—sodomized or attempted to sodomize other, younger members of the football team who also attended the camp using the handle of a broomstick.  *Id.* at ¶¶ 79-101.

With respect to the Roots, it is alleged that Mel Root "was present from time to time and participated in some camp activities."  *Id.* at ¶ 74.  Specifically, Plaintiffs allege that Mr. Root taught the football players the WLC song at a campfire.  *Id.* at 76.  Mary Kay Root was allegedly "present on premises during the camp."  *Id.* at ¶ 74.  There are no further factual allegations regarding the Roots in the Complaint.

## II.    LEGAL STANDARD

In deciding a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), the court "assume[s] the truth of the plaintiff's well-pleaded factual allegations and view[s] them in the light most favorable to the plaintiff."  *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).  Dismissal is not appropriate if the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1969, 1974, 167 L.Ed.2d 929 (2007).)  However, "the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims."  *Id.*

"Whether a duty exists is a question of law for the courts to decide."  *Herrera v. Quality Pontiac*, 2003-NMSC-018, ¶ 6, 134 N.M. 43, 73 P.3d 181 (internal quotation omitted). Foreseeability is relevant to the question whether a duty is owed because "[t]he duty element of negligence focuses on whether the defendant's conduct foreseeably created a broader 'zone of

risk' that poses a general threat of harm to others." *Id.* at ¶ 10.  Put another way, the analysis of

duty requires a determination "that the injured party was a foreseeable plaintiff-that he [or she]

was within the zone of danger created by [the defendant's] actions[-] ... as a matter of law by the

judge, using established legal policy ...." *Id.* (quoting *Calkins v. Cox Estates*, 110 N.M. 59, 61,

792 P.2d 36, 38 (1990)).

## III.   DISCUSSION

        One person generally does not have a duty to protect another from harm caused by the

criminal acts of third persons.  *Romero v. Giant Stop-N-Go of New Mexico, Inc.*, 2009-NMCA-

059, ¶ 7, 146 N.M. 520, 212 P.3d 408.  An exception to this general rule exists in the context of a

special relationship.  *Id.*  As an example, the relationship between a business and its patrons

gives rise to the business owner's duty, under certain circumstances, to protect its patrons from

the criminal acts of others.  *See, e.g., Reichert v. Atler*, 117 N.M. 623, 875 P.2d 379 (1994).  In

*Reichert*, the Court held recognized that the following duty is owed by businesses to their

patrons:

> [T]he proprietor of a place of business who holds it out to the
> public for entry for his business purposes, is subject to liability to
> guests who are upon the premises and who are injured by the
> harmful acts of third persons if, by the exercise of reasonable care,
> the proprietor could have discovered that such acts were being
> done or about to be done, and could have protected against the
> injury by controlling the conduct of the other patron.

*Id.* at 625, 875 P.2d at 381 (quoting *Coca v. Arceo*, 71 N.M. 186, 189, 376 P.2d 970, 973(1962)).

As a result, the owners of the A-Mi-Gusto lounge could be held liable for the death of a patron

who was shot by another patron given that the owners' daughter and employee observed the two

patrons arguing and, further, the deceased patron had advised her that the other patron carried a

gun and previously killed someone else in another state.  *Id.* at 624, 875 P.2d at 380.

As indicated by the scope of the duty owed in *Reichert*, a business's duty to protect patrons is limited.  "[T]his duty extends only to foreseeable conduct and resultant harm." *Romero*, 2009-NMCA-059, ¶ 7.  "[N]o one is bound to guard against or take measures to avert that which he or she would not reasonably anticipate as likely to happen." *Herrera v. Quality Pontiac*, 2003-NMSC-018, ¶ 20, 134 N.M. 43, 73 P.3d 181.  "Therefore, we assess foreseeability by reference to 'what one might objectively and reasonably expect, not merely what might conceivably occur.'" *Romero*, 2009-NMCA-059, ¶ 8 (quoting *Johnstone v. City of Albuquerque*, 2006-NMCA-119, ¶ 8, 140 N.M. 596, 145 P.3d 76 (internal quotation marks and citation omitted)).  In *Romero*, for instance, the court found that New Mexico business owners owed no duty to protect customers from or "to prevent a sudden, deliberately targeted assassination of customers on its premises." *Id.* at ¶ 12.  To the extent that the particular business had experienced previous incidents that were similar to the incident at issue, the court might have held that the incident was foreseeable and that the business consequently had a duty to prevent the incident from occurring again.  *Id.* at ¶ 11 ("If this case involved injuries suffered in the course of a criminal incident for which there was some previous similarity, such as shoplifting, loitering, or commercial robbery, the event and the resultant injuries might have been sufficiently foreseeable to give rise to a duty").

New Mexico courts also recognize that the landlord-tenant relationship may give rise to a duty to protect others.  *See, e.g., Rummel v. Edgemont Realty Partners, Ltd.*, 116 N.M. 23, 26, 859 P.2d 491, 494 (Ct. App. 1993) (noting that landlords in possession of the premises are comparable to business occupants in that both generally owe a duty of care to protect against a third person's foreseeable criminal conduct).  Where a landlord is not alleged to be in possession of the premises at issue and has not allegedly retained control over a leased premises, the

landlord does not have a special relationship with the tenant such that he may be held liable for the acts of third parties. *Id.*, 116 N.M. at 27, 859 P.2d at 495 (holding that "[t]he allegations set forth in the amended complaint do not sufficiently allege the type of possession or control that give rise to a duty on the part of Edgemont"). Thus, in *Rummel*, the Court of Appeals affirmed dismissal of tort claims against a landowner who had leased the premises given that there were no allegations that the landowner had retained any possession or control of the premises. *Id.* at 25, 859 P.2d at 493 ("Edgemont argued that under its lease back arrangement it did not retain control of the premises where Plaintiff was assaulted and that it had no legal duty to protect Plaintiff from criminal attack by unknown third parties").

The allegations in the present case are that the Roots "are responsible for allowing LVCS to use the Western Life Camp for the Robertson High School football camp from August 11 through 14, 2008." *Notice of Removal* at Ex. A, ¶ 35. Plaintiffs allege the Roots "are the owners and managers of the Western Life Camp" and that they "have been residents of San Miguel County, New Mexico." *Id.* They contend that LVCS Superintendent Richard E. Romero, also a defendant, "entered into an agreement with the Roots to lease the Western Life Camp, owned by the Roots." *Id.* at ¶ 59. According to Plaintiffs, "the Western Life Camp became de facto public property of LVCS during the period of the lease arrangement from April [sic] 11-14, 2008." *Id.* Plaintiffs claim that although Robertson High's Head Football Coach Raymond D. Woods and Assistant Principal and Athletic Director Michael C. Yara—both of whom are defendants—discussed having a coach stay in each of the cabins to supervise the students, they ultimately decided that the coaches would not stay in the cabins with the players, and "Romero approved this plan." *Id.* at ¶ 61. They contend that Romero, Yara, and Woods "and/or the other of the Coaches had actual knowledge of prior violent attacks by [Defendant Michael] Gallegos,

Jr. but took no precautions to protect the other students from his known tendency toward violent

outbursts." *Id.* at ¶ 67.  Defendant Woods allegedly made a speech at the opening of camp

concerning safety, respect for nature, and the need to exercise caution around wild animals.  *Id.*

at ¶ 72.

There are no allegations that the Roots retained control over the camp in any way.

Plaintiffs do not claim that the Roots were responsible for bunk assignments, for scheduling, or

for supervising any activities at WLC during the time the Robertson High School football camp

was going on.  The only specific factual allegations concerning the Roots are as follows:

> 74.    Mel Root, the owner of the camp, was present from time to
>        time and participated in some camp activities.  His
>        daughter, Mary Root, was the co-owner of the camp and
>        served as the camp manager.  She was present on the
>        premises during the camp.
> ...
> 76.    ...There was then a campfire at which the Coaches took
>        turns introducing themselves, followed by the players
>        introducing themselves.  Freshmen and sophomores were
>        ordered to gather firewood by Gallegos, Jr.  The players
>        were taught the Western Life Camp song by Mel Root,
>        followed by the Robertson High School fight song.

*Id.*  Plaintiffs describe the duty they claim the Roots owed in this case as follows:

> 221.   The Roots owed a duty to Plaintiffs to exercise reasonable
>        care for their safety.  This duty included: maintaining the
>        premises in a safe condition; making certain that lessees
>        such as LVCS ensured that students on the premises were
>        adequately chaperoned, supervised, subject to properly
>        implemented guidelines for organization, including the
>        assignment of cabins; and having appropriate policies,
>        procedures and protocols in place to provide for the safety
>        of the students while on campground property.

*Id.* at ¶ 221.

Plaintiffs' allegations in the present case, even when they are viewed in the light most

6

favorable to Plaintiffs, are not sufficient to state a plausible claim that the Roots sustained

sufficient control over the Western Life Camp during the period in 2008 when the Robertson

High School football camp leased the premises.  Assuming all of Plaintiffs' factual allegations

are true, the Complaint fails to demonstrate the Roots' possession or control over the WLC

premises during the lease period which might give rise to the type of special relationship that is

necessary to support a duty owed by the Roots to protect Plaintiffs from harm as a result of the

criminal actions of third parties.

WHEREFORE, IT IS ORDERED that *Defendants Mel Root and Mary Kay Root's*

*Motion to Dismiss*, filed August 27, 2010 (Doc. 40) is **granted.**  Plaintiffs' claims against

Defendants Mel Root and Mary Kay Root—specifically, Plaintiffs' Eighteenth Cause of Action

found at page 50 of Plaintiffs' Complaint—are therefore dismissed without prejudice.

_____
SENIOR UNITED STATES DISTRICT JUDGE

Counsel for Plaintiffs:

Carolyn M. Nichols, Esq.
Robert Ortiz, Esq.
Albuquerque, NM

Robert R. Rothstein, Esq.
Brendan K. Egan, Esq.
Santa Fe, NM

Counsel for Defendants LVCS, Romero, and Yara:
Jerry A. Walz, Esq.
Albuquerque, NM

Counsel for Defendants Woods, Morris, Gogue, Uranga & Esparza:
Henry F. Narvaez, Esq.
Martin R. Esquivel, Esq.
Denise M. Chanez, Esq.
Albuquerque, NM

Counsel for Defendant Campos:
John S. Stiff, Esq.

Ann Louise Keith, Esq.
Albuquerque, NM

Counsel for Defendants Alvarez and Neizman:
Gerald Coppler, Esq.
Santa Fe, NM